UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA NAGEL, | ) | |
| | ) | CASE NO. 1:22-CV-866 |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| v. | ) | |
| | ) | |
| CLOVERLEAF LOCAL SCHOOL | ) | **MEMORANDUM OPINION AND** |
| DISTRICT BOARD OF EDUCATION, | ) | **ORDER** |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## I.    Procedural History

On May 24, 2022, Plaintiff filed a complaint alleging that all Defendants, including Cloverleaf Local School District Board of Education ("Board"), Wendy Nelson, Margo Gibson-Costello, and Christy Sullivan (collectively, "Cloverleaf Defendants"), violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504") by discriminating against Plaintiff's son, J.N., on the basis of his disability.  (ECF No. 1).   J.N. was diagnosed with autism spectrum disorder and attended programming for individuals with disabilities at the Day Skills Lodge.  (*Id.* at PageID #4).  While at Day Skills Lodge, J.N. became overwhelmed by another client's actions while left unsupervised in a room.  (*Id.* at PageID #10).  J.N. physically assaulted the client, which resulted in his expulsion from the program and being refused entry to at least one other program.  (*Id.* at PageID #10–11).  Plaintiff filed six causes of action against all Defendants.  (*Id.* at PageID #11–21).

On March 1, 2023, the Cloverleaf Defendants answered Plaintiff's complaint.  (ECF No. 48).  The Cloverleaf Defendants also answered crossclaims from the remaining Defendants.  (ECF

Nos. 49, 50, 51).  On November 3, 2023, the Cloverleaf Defendants moved to amend their answer to Plaintiff's complaint.  (ECF No. 68).  On December 11, 2023, the Court granted the Cloverleaf Defendants' motion to amend because it was unopposed.  On December 12, 2023, the Cloverleaf Defendants filed their amended answer.  (ECF No. 74).

On February 14, 2024, the Cloverleaf Defendants moved for judgment on the pleadings as to the complaint pursuant to Fed. R. Civ. P. 12(c).  (ECF No. 80).  The Cloverleaf Defendants argue that: (1) Plaintiff is prohibited from "repackaging" her Individuals with Disabilities Education Act ("IDEA") claims into either ADA or Section 504 claims; (2) denial of free and appropriate public education ("FAPE")  is insufficient to support claims brought under the ADA or Section 504; (3) Plaintiff did not sufficiently plead discriminatory intent under the ADA or Section 504; (4) all state and federal claims are barred by the statutes of limitations; (5) no viable claims have been asserted against the individual Cloverleaf Defendants; and (6) all Cloverleaf Defendants have statutory immunity under O.R.C. Chapter 2744.  (*Id.*).

On March 15, 2024, Plaintiff opposed the motion, arguing that: (1) Plaintiff is free to pursue claims under the ADA and Section 504 because she is not seeking relief that IDEA can provide and is exempt from administrative remedy exhaustion requirements as a result; (2) Plaintiff adequately pleaded claims for disability discrimination under the ADA and Section 504; (3) the applicable statutes of limitations do not bar Plaintiff's claims because J.N.'s condition tolls the statutes of limitations; (4) the claims against the individual Cloverleaf Defendants are essentially claims against the public entity and need not be dismissed; and (5) the individual Cloverleaf Defendants are not protected by statutory immunity for state law claims because they engaged in behavior that amounts to malicious purpose, bad faith, or wanton or reckless conduct, which

absolves the protection of immunity for employees.  (ECF No. 83).

On March 29, 2024, Cloverleaf Defendants replied in support of their motion.  (ECF No. 86).  They argue that J.N.'s educational records do not indicate he is of "unsound mind," so there is no tolling of the statutes of limitations.  (*Id*.).  The Cloverleaf Defendants further assert that Plaintiff admitted that no federal claims were asserted against the individual Cloverleaf Defendants, so dismissal of those claims is warranted.  (*Id*.).  The Cloverleaf Defendants argue that Plaintiff conceded that the Board is immune from state claims under O.R.C. Chapter 2744 due to her lack of an argument to the contrary, and the individual Cloverleaf Defendants maintain statutory immunity because Plaintiff has not adequately pleaded facts that illustrate that Defendants' conduct fell within the exception to statutory immunity.  (*Id*.).

On February 14, 2024, the Cloverleaf Defendants also moved for judgment on the pleadings as to the crossclaims filed by Defendants Melissa Kania, James Kirby, Mary Neu, Medina Creative Accessibility, Inc., Medina Creative Housing, Inc., and James Derry (collectively the "Medina Defendants").  (ECF No. 81).  The Cloverleaf Defendants assert that the crossclaims for contribution and indemnity amount to claims based upon an alleged breach of contract or an alleged tort.  (*Id*. at PageID #846).  The Cloverleaf Defendants assert a variety of arguments as to why these claims are barred.  (*Id*. at PageID #847).

On March 15, 2024, the Medina Defendants opposed the Cloverleaf Defendants' motion.  (ECF No. 84).  On March 29, 2024, the Cloverleaf Defendants replied in support of their motion.  (ECF No. 85).

## II.    Legal Standard

After pleadings are closed, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings essentially constitutes a delayed motion under

Rule 12(b)(6) and is evaluated under the same standard.  *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021).  Under that standard, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In ruling on a Rule 12(c) motion, the Court considers all available pleadings.  *See* Fed. R. Civ. P. 12(c).  "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice."  *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010).

### III.    Motion for Judgment on the Pleadings as to Plaintiff's Complaint

#### A.    Statutory Immunity

##### 1.  Cloverleaf Local School District Board of Education

The Cloverleaf Defendants assert that they have statutory immunity for Plaintiff's state law claims pursuant to O.R.C. Chapter 2744.  (ECF No. 80, PageID #842).  They argue that Plaintiff previously admitted that the Cloverleaf Local School District Board is protected by statutory immunity.  (*Id.*).  Plaintiff addresses whether the individual Cloverleaf Defendants are subject to statutory immunity in her opposition, but she did not address statutory immunity of the Board. (*Id.* at PageID #842–44).  Cloverleaf Defendants argue that the lack of opposition regarding the Board's statutory immunity is a concession that the Board is subject to statutory immunity, and the state claims against the Board should be dismissed.  (ECF No. 86, PageID #924–25).

Ohio's Political Subdivision Tort Liability Act addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions.  The Court uses a three-tiered analysis to determine whether a political subdivision is immune from tort liability.  *Est. of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.,* 341 F. Supp. 3d 793, 809 (S.D. Ohio 2018).  Ohio Revised Code § 2744.02(A)(1) establishes a general rule of immunity for political subdivisions, with exceptions outlined in O.R.C. § 2744.02(B).  If an exception under O.R.C. § 2744.02(B) applies, the analysis proceeds to the third tier, which involves considering the application of O.R.C. § 2744.03.  *Greene Cty. Agricultural Soc. v. Liming*, 733 N.E.2d 1141, 1146 (Ohio 2000).  Generally, the Sixth Circuit has routinely held that school boards are statutorily immune from tort liability.  *See, e.g., M.P. v. Monroe Loc. Sch.*, No. 1:19-CV-01056, 2021 WL 4479377, *9 (S.D. Ohio Sept. 30, 2021); *Est. of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 809 (S.D. Ohio 2018); *Wilson v. Columbus Bd. of Educ.,* 589 F. Supp. 2d

952, 967 (S.D. Ohio 2008).

Under O.R.C. § 2744.02(A)(1), "a political subdivision is not liable for damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  The definition of a "political subdivision" includes school districts.  O.R.C. § 2744.01(F).  The provision of a system of public education is a governmental function.  O.R.C. § 2744.01(C)(2)(c).  Cloverleaf Local School District, as a school district providing public education, is a political subdivision engaged in a governmental function.  As such, the primary prong to establish immunity is satisfied.  None of the enumerated exceptions outlined in O.R.C. § 2744.02(B) apply to the facts of this case.

Consequently, the Board has statutory immunity for the state law tort claims.  Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to claims three through six and **DISMISSES** those counts against the Board.

### 2.  Statutory Immunity as to the Individual Cloverleaf Defendants

Defendants further assert that the individual Cloverleaf Defendants – Wendy Nelson, Margo Gibson-Costello, and Christy Sullivan – are protected by statutory immunity against the state law claims pursuant to O.R.C. Chapter 2744.  Defendants argue that the individual Cloverleaf Defendants have been sued in their official capacities and that they should receive the same statutory immunity applicable to the Board because "the Board is the only real party in interest." (ECF No. 80, PageID #843).  Defendants state that, because they have been sued in their official capacities, the Court should disregard any analysis under O.R.C. § 2744.03(A)(6), which enumerates exceptions to statutory immunity that apply to employees.  (*Id.*).

Plaintiff argues that Defendants incorrectly assume that the individual Cloverleaf

Defendants have only been sued in their official capacities. (ECF No. 83, PageID #886). As a result, Plaintiff asserts that the individual Cloverleaf Defendants do not enjoy the statutory immunity analysis applicable to the public entity in place of the analysis for immunity of public employees under O.R.C. § 2744.03. (*Id.* at PageID #887). Plaintiff argues that the individual Defendants' conduct falls under the immunity exception outlined in O.R.C. § 2744.03(A)(6)(b), which states that employees do not have immunity if the employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner. (*Id.*). Plaintiff argues that the complaint alleges that the individual Defendants engaged in such behavior and whether the Defendants' behavior constitutes reckless or wanton conduct is a question for the jury to decide. (*Id.* at PageID #888).

In response, Defendants reassert that the immunity analysis utilized for the public entity applies to the individual Cloverleaf Defendants. (ECF No. 86, PageID #925). Defendants also argue that, to the extent the Board is *not* the only real party in interest, Plaintiff has not adequately alleged how the individual Defendants engaged in bad faith, malicious purpose, or reckless misconduct in any act or omission. (*Id.* at PageID #926). As a result, Defendants argue that the exception to statutory immunity that would be granted by a showing of such conduct has not been demonstrated by Plaintiff, and the claims against the individual Cloverleaf Defendants should be dismissed. (*Id.* at PageID #927).

As to Defendants' argument that the immunity analysis applicable to the Board applies to the individual Cloverleaf Defendants, it does not apply when determining immunity of individual employees of a political subdivision pursuant to Ohio Revised Code § 2744. *Cramer v. Auglaize Acres,* 865 N.E.2d 9, 13 (Ohio 2007). As a result, the individual Cloverleaf Defendants do not automatically enjoy the same immunity as the Board. Generally, O.R.C. 2744.02(A)(1) provides that political subdivisions and their employees are immune from liability related to their

governmental functions.  *Doe v. Greenville City Sch.*, 220 N.E.3d 763, 766 (Ohio 2022).  An exception to this applies when the employee's acts or omissions were wanton or reckless, with malicious purpose, or in bad faith.  O.R.C. § 2744.03(A)(6)(b).

Wanton misconduct is the "failure to exercise any care whatsoever."  *Fabrey v. McDonald Village Police Dep't.*, 639 N.E.2d 31, 35 (Ohio 1994).  Conduct recklessly disregards the safety of others "if such risk is substantially greater than that which is necessary to make his conduct negligent."  *Id.*  "[I]n the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk."  *O'Toole v. Denihan*, 889 N.E.2d 505, 517 (Ohio 2008).

Plaintiff alleges that the complaint contains sufficient facts from which a jury could conclude that Defendants' conduct falls within the O.R.C. § 2744.03(A)(6)(b) immunity exception.  (ECF No. 83, PageID #888).  J.N.'s Individualized Education Program ("IEP") documents specify that he can have "unpredictable emotional outbursts," "a difficult time orienting to others," and "needs continued practice planning what to say and do in situations involving safety."  (ECF No. 1, PageID #105 and 111).  When participating in Medina County Career Center's Culinary Arts & Textiles program, J.N. wore noise-canceling headphones when working in groups or in busy environments due to his sensitivity to environmental stimuli.  (ECF No. 1, PageID #6).  The individual Defendants were aware of a September 12, 2017 incident in which J.N. became physical and had a meltdown when left alone on a school bus.  (*Id.* at PageID #7). Plaintiff alleges that Defendants Nelson and Sullivan observed J.N. the day after, and because of, the bus incident.  (*Id*).  In an email to Gibson-Costello after that observation, Nelson noted that Day Skills Lodge requested a 1:1 aide "due to safety concerns for [J.N.], other clients, and staff." (ECF No. 1, PageID #99).  Nelson stated that she and Sullivan were on "noise overload after about 25 seconds" at the Lodge and understood J.N.'s frustration with same.  (*Id.*).  In another email to

Gibson-Costello on September 13, 2017, Jackie Loomis, the school liaison for Medina Creative Accessibility, requested a 1:1 aide for J.N. "because of safety issues involved."  (*Id*. at PageID #100).  Plaintiff alleged that she separately contacted Gibson-Costello about J.N.'s need for an aide.  (*Id*. at PageID #7).

The individual Defendants were aware of the request for a 1:1 aide for J.N. and aware of at least one prior incident in which J.N. reacted physically to his surroundings.  A determination of recklessness "turns on whether the Defendants knew of and could foresee harm" and "whether they took actions in response."  *Shively*, 579 F. App'x at 359–60.  In this case, the allegations noted above may be construed as recklessness on the part of the individual Defendants.  Although the Defendants were aware of the need for an aide for J.N. for his safety and others, an aide was not provided.  Plaintiff alleges, "Defendants were reckless as it was foreseeable that the failure to ensure that J.N. was adequately supervised would likely cause injury."  (ECF No. 1, PageID #18).  The email communications after the September 12, 2017 incident support that allegation.

Ultimately, the issue of malice, bad faith, and wanton or reckless behavior is for a jury to decide.  *Shively*, 579 F. App'x at 359.  At the pleadings stage, a plaintiff "is only required to allege a set of facts which, if proven, would plausibly allow him to recover."  *Id*.  *See also Mohat v. Horvath*, 2013 WL 5450296, *6 (Ohio Ct. App. 11th 2013) (holding the trial court properly denied defendants' motion for judgment on the pleadings based on immunity because it could not be determined that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief).  At this stage of the proceedings, Plaintiff has pleaded facts that, if construed in the light most favorable to Plaintiff, could establish that individual Defendants are not entitled to statutory immunity.  Accordingly, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to claims three through six against the individual Cloverleaf Defendants.

**B.**     **Statutes of Limitations**

The Cloverleaf Defendants argue that all federal and state claims against them are barred by the applicable two-year statutes of limitations.  (ECF No. 80, PageID #838).  Defendants note that the instant action was filed on May 24, 2022, and the statutes of limitations expired on November 27, 2019.  (*Id*.).  Defendants acknowledge that tolling the statute of limitations for the state claims is permissible when a plaintiff is of unsound mind.  (*Id*. at PageID #840).  However, Defendants contend that the complaint did not sufficiently allege that J.N. is of unsound mind, so tolling is inapplicable.  (*Id*.).

Plaintiff responds that the statutes of limitations for federal claims are borrowed from state law, so the tolling provisions of the state are also borrowed.  (ECF No. 83, PageID #883).  Plaintiff states that Ohio law tolls the statute of limitations when the person is of unsound mind and J.N. has been of unsound mind his entire life due to his intellectual disability.  (*Id*.).  As a result, Plaintiff's claims are not barred by the two-year limit because tolling applies.  (*Id.* at PageID #885).  In reply, Defendants argue that J.N.'s diagnosis of autism spectrum disorder does not fall within the bounds of having an "unsound mind."  (ECF No. 86, PageID #917).  Defendants reassert that nothing in J.N.'s educational records support J.N. being of "unsound mind."  (*Id*.).

The Sixth Circuit has held that claims under the ADA and Section 504 brought in Ohio generally are subject to a two-year statute of limitations borrowed from the two-year limit provisions applicable to personal injury actions in the state.  *McCormick v. Miami U.*, 693 F.3d 654, 664 (6th Cir. 2012).  "When the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are 'inconsistent with the federal policy underlying the cause of action under consideration.'"  *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010), quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478,

485 (1980).  Accordingly, Ohio's tolling provisions may be borrowed when assessing the statute of limitations applicable to this case.

Ohio law provides that the statute of limitations is tolled for causes of action where an individual is a minor or of unsound mind.  Ohio Rev. Code § 2305.16.  Ohio Revised Code § 1.02(C) generally defines "[o]f unsound mind" to mean "that the person lacks the relevant mental capacity."  Furthermore, "[w]hen the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all."  O.R.C. § 2305.16.

When assessing whether a person is of unsound mind for purposes of O.R.C. § 2305.16, the Court considers whether there is "any evidence tending to show any species of mental deficiency or derangement from which the plaintiff was suffering which would prevent him from properly consulting with counsel, preparing and presenting his case, and attending to his affairs, and preclude him from asserting his rights in a court of justice."  *Qualls v. Peregrine Health Services, Inc.*, 2022-Ohio-4644, ¶ 17 (Ohio Ct App. 10th Dist. Dec. 22, 2022).  "If it is claimed that the plaintiff was of unsound mind at the time the cause of action accrued, any otherwise admissible evidence tending to support that claim may be used to establish her entitlement to tolling."  *Nasser ex rel. Nasser v. Orthopaedic Ass'n of Youngstown*, 2002-Ohio-5208, ¶ 15 (Ohio Ct. App. 7th Dist. Sept. 26, 2022) (citing *Almanza v. Kohlhorst*, 85 Ohio App. 3d 135, 137 (1992)).  Ultimately, whether enough evidence is demonstrated that indicates that a party is "of unsound mind" is a matter for a jury.  *Bowman v. Lemon*, 154 N.E. 317, 319 (Ohio 1926).

Cloverleaf Defendants argue that there are no allegations that J.N. is of unsound mind, or that he has an intellectual disability for the purposes of O.R.C. § 2305.16.  (ECF No. 80, PageID #839).  In tandem, they argue that "mere claims" of unsound mind or mental deficiency is insufficient to toll the statutes of limitations.  (*Id.*).

Plaintiff has demonstrated more than "mere claims" about J.N.'s disability that renders him of unsound mind.  The pleadings outline several components of J.N.'s intellectual disability, including but not limited to: his diagnosis of autism spectrum disorder; his inability to remain stable in social situations without intervention; and his sensitivity to excessive stimuli from his environment, which can cause J.N. to become overwhelmed, anxious, and "to exhibit socially inappropriate behaviors."  (ECF No. 1, PageID #4, 6–8).  J.N.'s participation in the Day Skills Lodge Program was facilitated by Cloverleaf Local Public Schools because the school district, "is required to place him in appropriate transition programs due to his age and *intellectual disability.*"  (ECF No. 1, PageID #6) (emphasis added).  J.N.'s abilities were determined to require "very substantial support" within the guidelines of Strategies for Teaching Based on Autism Research ("STAR").  (*Id*. at PageID #8 and 103).

"The appointment of a legal guardian for a person within the age of minority or of unsound mind does not remove the disabilities referred to in R.C. 2305.16 and, therefore, does not commence the running of the statute of limitations."  *Weaver v. Edwin Shaw Hosp*., 819 N.E.2d 1079, 1080–81 (Ohio 2004).  Ms. Nagel's role as the plaintiff on behalf of her son in this case does not preclude the tolling of the statute of limitations.  Based on the pleadings, "we cannot say that there is no evidence entitling the plaintiff to go to the jury upon this issue of unsoundness of mind." *Bowman*, 154 N.E. at 319.

Accordingly, the Court finds that Plaintiff has plausibly alleged a claim for tolling under O.R.C. § 2305.16, and the applicable statutes of limitations did not run prior to the filing of this case.  Plaintiff's claims are not time-barred.

### C.    Counts One and Two

#### 1.    Individual Cloverleaf Defendants

Defendants argue that counts one and two should be dismissed against the individual Cloverleaf Defendants because there is no individual liability under the ADA or Section 504.  (ECF No. 80, PageID #841).  Defendants argue that suing the individual Defendants in their official capacities is redundant.  (*Id.* at PageID #842).  In response, Plaintiff concedes there is no individual liability under the ADA or Section 504.  (ECF No. 83, PageID #885).  However, Plaintiff argues, "because the claims asserted against the individuals are essentially claims against the public entity and will not have any effect in the final analysis of the merits of the case, they need not be dismissed."  (*Id.*).

Individual defendants are not subject to individual liability under the ADA or Section 504 of the Rehabilitation Act.  *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Lee may not maintain an action under the ADA or the RA against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals").  Plaintiff's argument that the claims against the individual Cloverleaf Defendants need not be dismissed because they do not change the merits of the case is unavailing.  The individual Defendants are not subject to liability under the ADA and Section 504 as a matter of law.  As such, the claims against the individual Defendants warrant dismissal.  Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to claims one and two against the individual Cloverleaf Defendants.  Claims one and two are **DISMISSED** against Wendy Nelson, Margo Gibson-Costello, and Christy Sullivan.

#### 2.    Repackaging of IDEA Claims into ADA and Section 504 Claims

Defendants argue that the Court must dismiss counts one and two in their entirety because

13

of Plaintiff's failure to exhaust administrative remedies as required by the IDEA.  (ECF No. 80, PageID #831).  Defendants state that Plaintiff sets forth the same facts she presented during 2017 and 2021 due process proceedings.  *Id*. at PageID #832).  Defendants assert that Plaintiff is prohibited from repackaging failed IDEA claims into either ADA or Section 504 claims because Plaintiff abandoned those claims and failed to establish a denial of FAPE during either due process proceeding.  (*Id*.).  Defendant further contends that a denial of FAPE is insufficient to pursue a claim under the ADA or Section 504.  (*Id*. at PageID #837).

In response, Plaintiff asserts that the claims brought under the ADA and Section 504 are not repackaged IDEA claims.  (ECF No. 83, PageID #874).  Plaintiff argues that counts one and two are exempt from the administrative remedy exhaustion requirement because the relief sought, compensatory damages, is not provided under IDEA, so Plaintiff may pursue claims under the ADA and Section 504.  (*Id*. at PageID #878).

The IDEA clarifies:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Thus, if a plaintiff requests relief that is also available under the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures.  *Fry v. Napoleon Community Schools*, 580 U.S. 154, 157–58 (2017).

Plaintiff requests relief in the form of compensatory damages for counts one and two.  (ECF No. 1, PageID #13 and 16).  The exhaustion requirement of 20 U.S.C. § 1415(l) "applies *only* to suits that 'see[k] relief ... also available under' IDEA.  And that condition simply is not met in

situations like ours, where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide." *Luna Perez v. Sturgis Pub. Schools*, 598 U.S. 142, 147–48 (2023) (emphasis in original).  Counts one and two pursue a form of relief IDEA cannot provide, so those claims did not need to be administratively exhausted under the IDEA.

Accordingly, the Court **DENIES** Defendants' motion for judgment on the pleadings as to claims one and two against the Board.

### 3.  Disability Discrimination Claims under the ADA and Section 504

Defendants argue that Plaintiff did not sufficiently plead discriminatory intent based on bad faith or gross misjudgment which is required to establish discrimination under the ADA or Section 504.  (ECF No. 80, PageID #838).  Plaintiff responds that the pleadings are sufficient to provide reasonable inference that Defendants acted in bad faith or gross misjudgment when J.N. was not provided additional accommodations at Medina Creative.  (ECF No. 83, PageID #882).

The ADA provides, "no qualified individual with a disability, shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act likewise provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

In the Sixth Circuit, the ADA and the Rehabilitation Act share the same substantive standard.  *G.S. by & through Schwaigert v. Lee*, 558 F. Supp. 3d 601, 611 (W.D. Tenn. 2021) (citing *Zibbell v. Mich. Dept. of Human Servs.,* 313 F.App'x 843, 849 (6th Cir. 2009)).  The prima

15

facie elements for either an ADA or Section 504 claim are "(1) that he or she is a qualified person with a disability; (2) that he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program; and (3) the denial or discrimination was because of his or her disability." *H.M. v. Bd. of Educ. of the Kings Loc. Sch. Dist.*, 117 F. Supp. 3d 992, 1012 (S.D. Ohio 2015).

Plaintiff adequately alleged that J.N. is a disabled adult with an intellectual disability. J.N. is "qualified" if Plaintiff can "simply show that he or she is qualified to perform the function with or without reasonable accommodation by the defendant." *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003) (quoting *Doe v. Woodford County Bd. of Educ.,* 213 F.3d 921, 925 (6th Cir. 2000)). In other words, "[a] handicapped or disabled person is 'otherwise qualified' to participate in a program if she can meet its necessary requirements with reasonable accommodation." *Id*. at 165–66 (quoting *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 435 (6th Cir. 1998)). J.N. is an individual who has been diagnosed with autism spectrum disorder, "which causes intellectual disabilities, manifesting in deficits in social communication and interaction." (ECF No. 1, PageID #6). J.N.'s participation in the Day Skills Lodge program was facilitated by Cloverleaf Local School District, "which is required to place him in appropriate transition programs due to his age and intellectual disability." (*Id*.). The pleadings are sufficient to establish that J.N. is a qualified person with a disability.

As to the second and third elements, Plaintiff adequately alleged that J.N. was excluded from participation in, and was denied the benefits of, the program because of his disability. In the education context, a showing of discrimination requires a demonstration of something more than a school district's failure to provide a FAPE. *S.S. v. E. Kentucky U.,* 532 F.3d 445, 453 (6th Cir. 2008). "A plaintiff may allege disability discrimination under two available theories: intentional

discrimination and failure to reasonably accommodate." *Knox Cnty., TN v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023).

To prevail in a failure-to-accommodate claim, the plaintiff must demonstrate that the defendant reasonably could have accommodated his disability but refused to do so. *Id.* (citing *Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021)). Plaintiff must establish that the preferred accommodation was reasonable and that the accommodation provided was unreasonable. *Id.* The Sixth Circuit has indicated that students might have to plead bad faith or gross misjudgment to state a Section 504 or ADA claim when money damages are sought. *Id.* at 1002 (citing *Monahan v. State of Nebraska*, 687 F.2d 1164 (8th Cir. 1982)).

Plaintiff's complaint alleges that Defendants recognized J.N.'s status as a disabled individual who needed additional assistance on several occasions. Defendants created and implemented an IEP for J.N., which outlines his need for support in detail. (ECF No. 1, PageID #101–24). Communications among the Defendants after the September 12, 2017 incident indicate awareness that J.N. needed an aide for the safety of J.N., other students, and staff. (*Id.* at PageID #99–100). Despite the requests from Plaintiff and Medina Defendants, J.N. was not provided an aide at Medina Creative. The 1:1 aide could be a reasonable accommodation considering J.N.'s prior physical manifestations of his disability. At this stage, Plaintiff has alleged sufficient facts to allow for a reasonable inference that the Defendants did not offer a reasonable accommodation to J.N. Whether that failure to accommodate rises to the level of bad faith or gross misjudgment is a question for a later date. Accordingly, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to claims one and two against the Board.

### IV.    Motion for Judgment on the Pleadings as to the Crossclaims

Melissa Kania, James Kirby, Mary Neu, Medina Creative Accessibility, Inc., Medina

17

Creative Housing, Inc., and James Derry raised nearly identical crossclaims against the Cloverleaf Defendants for contribution and indemnification.  (ECF Nos. 15, 30, and 39).  The Cloverleaf Defendants argue that these crossclaims are essentially claims based upon an alleged breach of contract or an alleged tort, so those claims should be dismissed.  (ECF No. 81, PageID #846).  The Cloverleaf Defendants cite seven reasons that the alleged breach of contract claims should be dismissed, and six reasons the alleged tort claims should be dismissed.  (*Id*. at PageID #847).  The Cloverleaf Defendants are mistaken to in conflating the indemnification and contribution claims as breach of contract or tort claims.  The Medina Defendants have not raised a breach of contract crossclaim or a tort crossclaim against the Cloverleaf Defendants.

## A.    Indemnity

The Medina Defendants reply that they are not seeking express indemnity based on a provision of a written agreement, but rather pursuing indemnity that is implied by the status of the parties.  (ECF No. 84, PageID #897).  The Cloverleaf Defendants argue that 1) the Medina Defendants did not plead an implied indemnity claim, 2) the right to implied indemnity only arises from contract, 3) the Board is not liable under an implied contract, and 4) an implied contract claim was not pleaded against Defendant Gibson-Costello.  (ECF No. 85, PageID #909).

Defendant Kania's indemnification crossclaim states, "[i]n the event and to the extent Defendant/Cross-Claimant Kania is required to pay Plaintiff any damages, she is entitled to indemnification from Cloverleaf and Gibson-Costello for their active and/or primary breaches."  (ECF No. 15, PageID #383).    The remaining Medina Defendants raised nearly identical indemnification crossclaims.  (ECF No. 30, PageID #443; ECF No. 39, PageID #511–12).    The Medina Defendants allege, "[p]ursuant to statute, administrative regulation, contract, and/or common law, Cloverleaf was responsible to determine the level of supervision, accommodations,

modifications, and/or services for J.N. at the MCA Day Skills Lodge program." (ECF No. 15, PageID #383). The Medina Defendants then allege, "[t]he responsibility of Defendants Cloverleaf and Gibson-Costello to provide appropriate programs for Cloverleaf students was active and primary." (*Id*.). The Cloverleaf Defendants admit that they were "required to provide J.N. with a free and appropriate public education ("FAPE") pursuant to an individualized education program." (ECF No. 85, PageID #905). They admit, "[t]he IEP determined the transition services to be provided to J.N." and "Medina Creative provided J.N. with transition services pursuant to the IEP." (*Id*.). Additionally, Cloverleaf Defendants admit, "[t]he IEP team considered and rejected the request by Medina Creative to provide J.N. with a one-on-one aide at the Day Skills Lodge." (*Id*.).

Implied indemnity, often referenced under Ohio law as common-law indemnity, "should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to the make the secondary party liable for the wrongs committed solely by the other." *Reynolds v. Physicians Ins. Co. of Ohio*, 623 N.E.2d 30, 31 (Ohio 1993). Express indemnity "is based on a written agreement or contract in which one party (the indemnitor) promises to indemnify another party (the indemnitee) for payments it makes under circumstances set forth in the agreement or contract." *Wildcat Drilling, L.L.C. v. Discovery Oil and Gas, L.L.C.*, 222 N.E.3d 621, 628 (Ohio 2023).

The Medina Defendants attached a Vocational Training Employment Agreement signed by a Cloverleaf Local Schools representative on May 14, 2018 in support of their counterclaims. (ECF No. 15, PageID #385–88). The agreement does not contain any provision concerning indemnification, so express indemnity does not appear to be at issue here. Thus, the Court will just address implied indemnity. The Medina Defendants mentioned the common law in their

19

pleadings, which leaves the door open for implied indemnity.

An implied contract of indemnity has been recognized under Ohio law under certain relationships, such as "the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant." *Reynolds*, 623 N.E.2d at 31.  However, indemnification is not allowed when "the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." *Id*. at 31–32.  Interpreting the allegations of the crossclaims in the light most favorable to Medina Defendants, they have plausibly alleged a relationship that could ultimately result in an indemnification claim against Cloverleaf Defendants.  Notably, the Medina Defendants will not succeed in an indemnification claim if there is ultimately a determination that they are joint or concurrent tortfeasors with the Cloverleaf Defendants.  However, that is a determination for a trier of fact to decide.  The Court **DENIES** the Cloverleaf Defendants' motion for judgment on the pleadings as to the indemnification crossclaims.

## B.    Contribution

The Medina Defendants argue they are entitled to contribution from the Cloverleaf Defendants pursuant to O.R.C. § 2307.25.  (ECF No. 84, PageID #900).  They note that their crossclaims contain sufficient factual allegations to support a claim for contribution.  (*Id*. at PageID #901).  The Cloverleaf Defendants contest that O.R.C. § 2307.25 only applies to tort claims, which is not the basis for contribution at issue here.  (ECF No. 85, PageID #913).  The Cloverleaf Defendants additionally state that even if a right to contribution based on tort liability has been pleaded, the Court must dismiss the contribution claim as premature because contribution can only be enforced by motion and not as an independent cause of action.  (*Id*. at PageID #913–14).

Defendant Kania's contribution crossclaim states, "[i]f the trier of fact determines that Defendant/Cross-Claimant Kania was negligent, then she is entitled to contribution pursuant to

20

Ohio Revised Code § 2307.05 <u>et seq</u>." (ECF No. 15, PageID #382).  The remaining Medina Defendants raised nearly identical contribution crossclaims.  (ECF No. 30, PageID #443; ECF No. 39, PageID #511–12).  The Medina Defendants admit that the crossclaims for contribution are derivative of Plaintiff's claims, so the dismissals of some of Plaintiff's claims noted previously may limit the Medina Defendants' future ability to recover contribution if they are found negligent.

"[I]f one of more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them."  O.R.C. § 2307.25(A).  The Cloverleaf Defendants allege that tort is not the basis of the contribution crossclaims.  However, the pleadings specifically reference negligence as the basis for contribution.  The Cloverleaf Defendants also argue that contribution is enforced by motion under O.R.C. § 2307.26, so the Court should dismiss the crossclaims as premature and improperly raised.  (ECF No. 85, PageID #913–14).  However, Fed. R. Civ. P. 13(g) governs crossclaims in federal court and states, "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action."  "The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." *Id*.  Thus, while the Cloverleaf Defendants ask the court to dismiss the crossclaims for contribution as premature, Rule 13 expressly includes contribution and indemnification as valid crossclaims in federal court.

The Court finds that it would be premature to dismiss the contribution crossclaims before judgment against any party has been entered.  Thus, Defendants' motion for judgment on the

pleadings as to the contribution crossclaims is **DENIED**.

## V.    Conclusion

The Cloverleaf Defendants' motion for judgment on the pleadings as to the complaint is **GRANTED** in part and **DENIED** in part.  (ECF No. 80).  The Court **GRANTS** the motion with respect to Defendant Cloverleaf Local School District Board of Education as to claims three through six.  The Court **DENIES** the motion with respect to Defendant Cloverleaf Local School District Board of Education as to claims one and two.  The Court **GRANTS** the motion with respect to the individual Cloverleaf Defendants as to claims one and two.  The Court **DENIES** the motion as to the individual Defendants in claims three through six.  Counts one and two are **DISMISSED** against Wendy Nelson, Margo Gibson-Costello, and Christy Sullivan.  Counts three through six are **DISMISSED** against Cloverleaf Local School District Board of Education.  As no federal claims remain against the individual Cloverleaf Defendants, the Court will exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the individual Defendants in claims three through six.

The Cloverleaf Defendants' motion for judgment on the pleadings as to the crossclaims is **DENIED**.  (ECF No. 81).

**IT IS SO ORDERED**.

Dated:  September 9, 2024

_____

**HONORABLE CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**